MAY, J.
A doctor, who volunteered his services to a high school football team, appeals a judgment against him in a medical malpractice action. On appeal, the doctor raises several issues. We have reviewed them all and find no basis for reversal. We also find no basis for reversal on the issues raised in the cross-appeal. We write however to discuss section 768.135(2), Florida Statutes (2008), in the context of requiring an expert witness to have the same specialty as the doctor against whom testimony is given, and why the legislature may want to review this statute to determine what, if any, immunity it provides in its current form. Because we affirm the underlying judgment on liability and damages, we also affirm the appeal of the cost judgment in Case No. 10-562.
The plaintiff was injured while playing in a varsity football game. After a tackle, he was unable to move for a few seconds. He was then able to kick his legs and flipped himself over. He experienced extreme pain in his neck and right shoulder.
The doctor, an orthopedic surgeon, served as the volunteer team physician. He had previously worked in an emergency room and had received some training in pediatric orthopedics and sports medicine. When the doctor saw what happened, he ran onto the field and spent approximately fifteen minutes questioning the plaintiff about certain areas of pain or altered sensation, and conducted a brief medical exam. He recalled the plaintiff telling him that he saw a flash of light, but did not recall having been told of momentary unconsciousness or paralysis. The doctor did not believe the plaintiff had suffered a spinal cord injury.
With the assistance of the athletic trainer, the doctor removed the plaintiffs helmet, assisted him in sitting up, and walked him off the field. When they reached the sidelines, the doctor removed the patient’s shoulder pads. The plaintiff then complained of nausea. The doctor decided the plaintiff should be taken to the emergency room. The paramedics strapped the plaintiff on a backboard and transported him to the emergency room. The doctor followed the ambulance to the hospital.
Upon arrival at the emergency room, the doctor ordered x-rays of the plaintiffs neck and shoulder. He interpreted the x-ray films and showed them to the emergency room physician on duty. The doctor then ordered a CT scan at the C1-C2 levels. He excluded the possibility of a spinal cord injury based on his clinical exam and the x-rays. After looking at the CT scans, the doctor found no evidence of a hematoma, swelling, or spinal cord compromise.
The doctor diagnosed a neck strain and right shoulder contusion from acute trauma and gave the plaintiff pain medication, a soft cervical collar, and an arm sling. He told the plaintiff to follow up with his office in three to four days. The doctor billed the plaintiff for services rendered at the hospital.
Three days later, the plaintiff went to the doctor’s office, but was seen by another physician. By then, the plaintiff could not elevate his arm or flex his elbow. He had also lost significant strength in his arm and had diffused tenderness to touch throughout his elbow, forearm, wrist, and hand.
The plaintiff was referred for an MRI, which revealed an epidural hematoma on *398 the right side of the spinal cord at the Cl-C4 levels, and a non-hemorrhagic cord contusion behind the C5 level. The doctor admitted in retrospect, that he “would have put [the plaintiff] in a backboard on the field.”
The plaintiff sued the doctor, the emergency room physician, and the hospital. The verdict form separated the allegations of negligence against the doctor between his service at the field and at the emergency room. The jury found the doctor had been negligent in his treatment of the plaintiff on the football field, but not in his service at the hospital. The jury awarded the plaintiff $500,000 for past intangible losses and $250,000 for future damages. The jury found in favor of the other defendants.
The doctor appealed the judgment; the plaintiff cross-appealed the jury’s finding that the doctor did not act with reckless disregard in his care of the plaintiff at the hospital.[1]
Among the issues raised, the doctor argues the trial court erred in allowing an emergency room physician to render expert opinion testimony concerning the doctor’s treatment of the plaintiff on the football field because he was not an orthopedic surgeon or volunteer team physician. He further argues that the immunity statute for volunteer doctors prevents an expert in another area of specialty from testifying. We disagree.
Two statutes are in play within this issue, the volunteer team physician immunity statute and the medical malpractice expert witness statute. Section 768.135, Florida Statutes, titled “Volunteer team physicians; immunity,” provides:
Any person licensed to practice medicine pursuant to chapter 458, chapter 459, chapter 460, chapter 461, or chapter 466:
(1) Who is acting in the capacity of a volunteer team physician in attendance at an athletic event sponsored by a public or private elementary or secondary school; and
(2) Who gratuitously and in good faith prior to the athletic event agrees to render emergency care or treatment to any participant in such event in connection with an emergency arising during or as the result of such event, without objection of such participant,
shall not be held liable for any civil damages as a result of such care or treatment or as a result of any act or failure to act in providing or arranging further medical treatment when such care or treatment was rendered as a reasonably prudent person similarly licensed to practice medicine would have acted under the same or similar circumstances.
This statute provides a volunteer physician with immunity if the service is “rendered as a reasonably prudent person similarly licensed to practice medicine would have acted under the same or similar circumstances.” Id. It thus requires a plaintiff to prove that the volunteer physician failed to act “as a reasonably prudent person similarly licensed to practice medicine” to prevail in an action. While purporting to immunize a volunteer physician, it provides little more protection than general tort law, requiring only that the actions be compared to a “similarly licensed” person.
Relying on this statute, the doctor argues that the plaintiffs emergency room expert’s testimony was inadmissible against him because he was not a “similar *399 health care provider” as required by section 768.135. The plaintiff responds that the statute is inapplicable because the doctor did not gratuitously render services and because section 768.135 does not limit the expert’s specialty to the same specialty as the doctor.
First, we disagree with the plaintiffs argument that the bill sent by the doctor for services rendered at the emergency room exempts him from the immunity provided by section 768.135. His service at the football field was gratuitous.
Second, we find the statute’s reference to “similarly licensed” relates to the introductory paragraph of the statute, which specifies the various chapters under which a volunteer physician may be licensed. They include chapters 458 (medical practice), 459 (osteopathic medicine), 460 (chiropractic medicine), 461 (podiatric medicine), and 466 (dentistry). Even though the expert witness had never served as a volunteer team physician, never treated an athlete on the field, never practiced orthopedic surgery, and was not board certified, he was “similarly licensed” because both the doctor and the expert were medical doctors. Section 768.135 requires no more than that.
This leads us to section 766.102, Florida Statutes (2003), which governs expert witness testimony in medical malpractice actions. Subsection (5) provides in part:
A person may not give expert testimony concerning the prevailing professional standard of care unless that person is a licensed health care provider and meets the following criteria:
(a) If the health care provider against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:
1. Specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered; or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients; and
2. Have devoted professional time during the 3 years immediately preceding the date of the occurrence that is the basis for the action to:
a. The active clinical practice of, or consulting with respect to, the same or similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients;
b. Instruction of students in an accredited health professional school or accredited residency or clinical research program in the same or similar specialty; or
c. A clinical research program that is affiliated with an accredited health professional school or accredited residency or clinical research program in the same or similar specialty.
§ 766.102(5), Fla. Stat. (2003). It is this statute, which governs the requisite qualifications of an expert witness.
Recognizing the importance of this statute, the doctor relies on Barrio v. Wilson, 779 So.2d 413, 414 (Fla. 2d DCA 2000). There, the court held that a pulmonary specialist was not qualified to testify on the standard of care for an emergency room physician. Because of the specific holding in Bardo, however, we find it unpersuasive.
In Bardo, the defendant was an emergency room physician. The expert was not. The trial court found the pulmonologist qualified as a similar health care pro *400 vider. Id. The Second District held that section 766.102(6)(a), Florida Statutes (1997),[2] which establishes the qualifications for an expert in the field of emergency-medical services, controlled over the more general requirements for an expert witness found in section 766.102(2)(c)2 (1997).[3] Id. at 414. Unlike Barrio, here the expert is a pediatric emergency room specialist, who treated injured football players “very frequently” in the emergency department. While not an orthopedic surgeon, his qualifications satisfied the requirement that his “similar specialty” included “the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim ....”§ 766.102(5)(a)(l), Fla. Stat. (2003).
More recently, in Oken v. Williams, 23 So.3d 140 (Fla. 1st DCA 2009), the First District tackled the issue of whether an expert met the qualifications of section 766.102(5) for the purpose of filing an affidavit during the pre-suit screening process. The doctor against whom the affidavit was offered was a board certified cardiologist. The affidavit submitted was of a doctor board certified in both emergency and family medicine. The First District noted:
“Similar specialty” is not defined within the statutes. Case law also provides little useful guidance. What is clear from the statutory amendment, however, is that assertions regarding experience in a particular area, standing by themselves, are insufficient absent evidence of practice in a similar specialty. This interpretation of the statutory language is consistent with the intent of requiring a presuit affidavit and with the legislative history regarding the 2003 statutory amendment.
Id. at 146. The court concluded that the “ ‘expert’ must actively practice in the same or similar specialty.” Id. at 147. The court surmised that “[i]f emergency medicine physicians are allowed to testify to the standard of care for the specialized treatment of any type of complaint ... [then] emergency medicine physicians will be qualified to testify as to virtually every specialty.” Id. at 150. The court found the emergency room physician unqualified to render an expert opinion against the cardiologist.
The Second District recently disagreed with Oken in Holden v. Bober, 39 So.3d 396 (Fla. 2d DCA 2010). It envisioned “a scenario where an emergency department physician could be considered an expert witness specializing in a ‘similar specialty’ to that of a specialist treating a patient in an emergency department capacity.” Id. at 402. It rejected the First District’s rigid adherence to “same specialty,” and reversed the dismissal of the plaintiffs complaint. Id. at 402-03. The court remanded the case to the trial court to determine, in an evidentiary hearing, whether the emergency room physician’s affidavit was sufficient to comply with section 766.102(5). Id. at 403.
Our legislature has spent a considerable amount of time over the last few decades defining and redefining Florida’s Medical Malpractice Act. Section 766.102, which sets the standard for an expert witness’s qualifications, has also been the subject of amendments. Case law interpreting what “similar specialty” means has sometimes provided mixed signals. What is clear is that nothing is clear about “similar specialty.”
*401 Here, while the doctor’s specialty was orthopedic surgery, the plaintiff based its claim in part on what the doctor failed to do on the football field, failing to place the plaintiff on a backboard. The emergency room expert was not an orthopedic surgeon, but he had the expertise of what to do in such a circumstance. Had the allegations concerned some aspect of orthopedic surgery requiring a specific level of specialization, the emergency room physician may not have been qualified to render an expert opinion. Our decision is based upon the specific facts of this case. We find no error in the trial court’s admission of the emergency room physician’s expert testimony.
It would certainly be easier to require the precise area of specialization, but then that requirement might devolve into sub-specialty, sub-sub-specialty until there was no one with the same sub-sub-sub-specialty. The statute as written allows for sufficient expertise to ensure fairness. It does that by requiring either the same specialty or an expert with sufficient experience to testify.
Having resolved the appeal, a question still remains begging an answer. If section 768.135 provides immunity for a volunteer physician, how does its protection differ from basic tort law? Before a physician can be held liable for medical negligence, the plaintiff must prove that the physician fell below the standard of care of a reasonable physician under similar circumstances. See Fla. Std. Jury Instr. (Civ.) 402.4a.[4] Section 768.135 appears to provide no more protection (save the “similarly licensed” requirement) than general tort law. The statute purports to provide immunity, but its protection is illusory. If the legislature intended to provide some additional layer of protection to those physicians who volunteer their services, then perhaps the statute needs another look.
The cost judgment is also affirmed as the only issue raised was the outcome of the appeal of the underlying judgment on liability and damages.

Affirmed.

GROSS, C.J., and DAMOORGIAN, J., concur.

. The plaintiff separately appealed the defense verdict for the other defendants; those defendants cross-appealed on other issues. All appeals were heard together at oral argument.

. In 2003, section 766.102 was amended and the specific provision applicable to emergency room physicians changed from section 766.102(6)(a) to 766.102(9)(a).

. This statute is the predecessor of section 766.102(5), Florida Statutes (2003).

. Negligence is the failure to use reasonable care. Reasonable care on the part of a [physician] ... is that level of care, skill and treatment which, in light of all relevant surrounding circumstances, is recognized as acceptable and appropriate by similar and reasonably careful [physicians].... Negligence on the part of a [physician] ... is doing something that a reasonably careful [physician] ... would not do under like circumstances or failing to do something that a reasonably careful [physician] ... would do under like circumstances.
Fla. Std. Jury Instr. (Civ.) 402.4a.