LEVINE, J.,
dissenting.
I respectfully dissent from the majority opinion as I would reverse the trial court’s dismissal of the plaintiffs medical negligence suit. The majority agrees with the trial court’s dismissal and finds that the plaintiff failed to obtain an expert opinion that satisfied the “specialization requirement” of section 766.102, Florida Statutes (2009). I would reverse the trial court and find that the plaintiff did satisfy the requirements of the applicable statute that governed expert witness pre-suit affidavits in medical malpractice actions in effect at the time of suit.
Prior to initiating a medical malpractice action, the plaintiff must conduct a presuit “investigation to ascertain that there are reasonable grounds to believe that: (a) [a]ny named defendant in the litigation was negligent in the care or treatment of the claimant; and (b) [sjuch negligence resulted in injury to the claimant.” § 766.203(2), Fla. Stat. (2009). Then, the plaintiff must “notify each prospective defendant by certified mail, return receipt requested, of intent to initiate litigation for medical negligence.” § 766.106(2)(a), Fla. Stat. (2009).
“[A]t the time the notice of intent to initiate litigation is mailed,” the plaintiff must submit “a verified written medical expert opinion from a medical expert as defined in s. 766.202(6) ... which state *1060 ment shall corroborate reasonable grounds to support the claim of medical negligence.” § 766.203(2)(b), Fla. Stat. (2009). Section 766.202(6) defines a medical expert as “a person duly and regularly engaged in the practice of his or her profession who holds a health care professional degree from a university or college and who meets the requirements of an expert witness as set forth in s. 766.102.” Pursuant to section 766.102, if the defendant doctor is a specialist, then the medical expert must “[s]pecialize in the same specialty as the health care provider ... or specialize in a similar specialty that includes the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim and have prior experience treating similar patients.” § 766.102(5)(a)l., Fla. Stat. (2009) (emphasis added).
In this case, the trial court merely stated that “[i]t is determined that the affidavit is insufficient” without further elaboration. The majority elaborates that the affidavit is deficient because “[sjimply put, the infectious disease doctor is not an eye surgeon nor is the ophthalmologist an infectious disease doctor.”
The Florida Supreme Court held in Patry v. Capps, 633 So.2d 9, 13 (Fla.1994), that “when possible the presuit notice and screening statute should be construed in a manner that favors access to courts.” See also Kukral v. Mekras, 679 So.2d 278, 284 (Fla.1996) (“[T]he medical malpractice statutory scheme must be interpreted liberally so as not to unduly restrict a Florida citizen’s constitutionally guaranteed access to the courts, while at the same time carrying out the legislative policy of screening out frivolous lawsuits and defenses.”). Further, we should be guided by this court’s decision in Weiss v. Pratt, 53 So.3d 395 (Fla. 4th DCA 2011).
In Weiss, this court found that
while the doctor’s specialty was orthopedic surgery, the plaintiff based its claim in part on what the doctor failed to do on the football field, failing to place the plaintiff on a backboard. The emergency room expert was not an orthopedic surgeon, but he had the expertise of what to do in such a circumstance. Had the allegations concerned some aspect of orthopedic surgery requiring a specific level of specialization, the emergency room physician may not have been qualified to render an expert opinion.
Id. at 401.
Our court stated further,
It would certainly be easier to require the precise area of specialization, but then that requirement might devolve into sub-specialty, sub-sub-specialty until there was no one with the same sub-sub-sub-specialty. The statute as written allows for sufficient expertise to ensure fairness. It does that by requiring either the same specialty or an expert with sufficient experience to testify.
Id. (emphasis added).
In the present case, the defendant physician’s specialty was ophthalmology and the plaintiffs expert was a physician engaged in the practice of medicine related to epidemiology and infectious disease. The plaintiffs expert opined that there were reasonable grounds that the defendants were medically negligent by “failing to use, in the operating room, proper sterile technique and/or proper sterilization technique in order to prevent the contamination of [the plaintiffs] surgical site with Noeardia” (the bacterial infection allegedly contracted by the plaintiff). The expert’s curriculum vitae reflects that he has considerable experience in the areas of medicine upon which he opined. He went to reputable universities, earning his medical degree in 1988 and a master’s degree in public health with a focus on epidemiology. *1061 He is board certified in infectious diseases, teaches medical school courses on epidemiology and population health, and is a director of infection control at several hospitals. He has also acted as an ad hoc reviewer for various journals related to infectious diseases.
Clearly, the plaintiffs expert was, as recognized in Weiss, “an expert with sufficient experience to testify” about how the plaintiff contracted the infectious disease due to the alleged failure of the defendants to use proper sterilization techniques. Id. The plaintiffs expert satisfied the statutory requirement that the expert’s specialty include “the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim.” § 766.102(5)(a)l., Fla. Stat. (2009). Who better than an expert in epidemiology and infectious disease could testify about the medical condition of Nocardia and how it could be contracted?
The majority states that “the medical condition is ophthalmic in nature” and therefore the doctor providing the affidavit needed to specialize in a similar specialty. In fact, one could argue that the medical condition was immunologic in nature, as the complaint involved an allegation that the surgery was not sterile. Part and parcel of any treatment “ophthalmic in nature,” including ophthalmic surgery, is that the surgery be aseptic and free of bacteria. See PDR Medical Dictionary 1712 (1st ed. 1995) (defining “aseptic surgery” as “the performance of an operation with sterilized hands, instruments, etc., and utilizing precautions against the introduction of infectious microorganisms from without.”).
We should also note that effective July 1, 2013, the legislature deleted the statutory language allowing that the expert’s specialty include “the evaluation, diagnosis, or treatment of the medical condition that is the subject of the claim.” Section 766.102(5)(a)l. now defines the specialization requirement to include only those who “[specialize in the same specialty as the health care provider against whom or on whose behalf the testimony is offered.” The bill analysis recognizes that “[t]he bill limits the class of individuals who may offer expert testimony against a defendant specialist in a medical negligence action. These experts must specialize in the same, rather than similar, medical specialty as the defendant.” Fla. Comm, on Judiciary, SB 1792 (2013), Staff Analysis 1 (Mar. 29, 2013).
“The court has the right and the duty, in arriving at the correct meaning of a prior statute, to consider subsequent legislation.” Gay v. Can. Dry Bottling Co. of Fla., 59 So.2d 788, 790 (Fla.1952) (citation omitted). “When the legislature amends a statute by omitting words, we presume it intends the statute to have a different meaning than that accorded it before the amendment.” Capella v. City of Gainesville, 377 So.2d 658, 660 (Fla.1979); see also Norman J. Singer & J.D. Shambie Singer, 1A Sutherland Statutory Construction § 22:29 (7th ed. 2012) (“When a statute is amended and words are omitted, courts presume the legislature intended the statute to have a meaning different from the one it had before amendment.”). “[A]n amendment indicates that [the legislature] intended to change the original act by creating a new right or withdrawing an existing one. Therefore, any material change in the language of the original act is presumed to indicate a change in legal rights.” 1A Sutherland § 22:30 (footnote omitted). Thus, we can presume that the recent amendment by the legislature signifies a change in the law as it relates to who may file a medical expert affidavit. In this case, the pre-amendment statutory language supports the conclusion that the af- *1062 fídavit of the plaintiffs medical expert satisfied the requirements of the statute in effect at the time of suit.
In summary, I would reverse the dismissal of the trial court, and I would find the plaintiffs expert affidavit compliant with the law applicable at the time of suit.